A. E. GWYNNE in support of motion. R. D. & J. H. HANDY contra.

In Special Term—SPENCER, J. presiding.

## MARTIN LEWIS & Co. *vs.* GABRIEL SIMONS.

A mere moral obligation, where there has existed no prior legal one, unless where a legal obligation would have existed but for the interposition of some positive rule of law, is not a sufficient consideration for an express promise.

An obligation of *honor* cannot be enforced, nor does it form a good consideration for a promise.

In those cases where *in foro conscientiae*, and *in foro legis*, the party would have been bound to do the thing promised, had he not been released, or rendered unable to contract by some positive law, a moral obligation will be a good consideration for an express promise ; ex. gra. adults promise to pay a debt contracted during infancy.

A debt voluntarily discharged by the act of the party to whom it is due, for a valuable consideration, is wholly gone, and leaves no obligation to pay, either legal or moral.

Nor is it necessary that the consideration received, be equal to the debt discharged.

JONES & WARE for plaintiffs. STALLO & LEAKE for defendant.

Martin Lewis & Co. *vs.* Gabriel Simons.

Demurrer to petition.

The facts set forth in the petition, are, that in September 1851, the defendant being indebted to the plaintiffs on three promissory notes, and a book account for goods sold, amounting in all to $2,444.89, *before the maturity* of one of the notes, for $783.42, being in insolvent circumstances, proposed to pay the plaintiffs 50 per cent of the debt, in full of the entire demand—which proposition was accepted; the money paid; a receipt given by the plaintiffs acknowledging full payment of the notes, and the notes given up. In January last the plaintiffs met the defendant in Baltimore, and having heard that he had settled with the other creditors, and was again doing business on his own account, called upon him for the amount unpaid of said debt, and thereupon the defendant agreed to pay the balance in the ensuing spring, which he failed to do; and to recover which, with interest, this suit was brought. The question presented by the demurrer was, whether the foregoing facts constituted a good cause of action.

SPENCER, J.

There is no doubt, that the promise of the defendant is without consideration, and therefore void, unless the fact of the preceding indebtedness, from which he was discharged by the act of the plaintiffs, can be set up as still subsisting *in foro conscientiae,* and thereby constitute a valid foundation for the new promises.

The question, thus presented, is one which has been much considered and variously decided. All the earlier cases hold in general terms, that a *moral* obligation is a sufficient consideration for an express promise. And Chief Justice Mansfield, in Merrill *v.* Gibbs, 3 *Farm.* 311, went

so far as to say that "an obligation *in honor*" will suffice
for such a promise. But this doctrine, in modern cases,
has undergone much modification, and is to be taken with
many exceptions. Indeed the current of authority now
is, that a *mere moral* obligation, where there has existed
no prior *legal* one, unless, where a legal obligation would
have existed but for the interposition of some positive
rule of law, is not a sufficient consideration for an express
promise. *Chitty on Con.* 46–50. A mere obligation of
*honor* cannot be enforced, nor does it lay the foundation
for a new promise. A *voluntary note* is an obligation of
this sort; but it cannot be enforced though the maker
should afterwards, time and again, promise to pay it. So
if one make a voluntary gift to another, an express prom-
ise by the latter to pay the *value* of it, is not binding. 11
*Ad. & El.* 438; Eastwood *vs.* Kenyon. In what cases
then will a *moral* obligation, as it is called, lay the foun-
dation for an express promise? I answer, in those cases
where in the forum of conscience and in the forum of *law*,
the party would have been bound to do the thing prom-
sed, had he not been released, or rendered unable to con-
tract by mere positive law. Of this character are prom-
ises by an *adult* to pay a debt contracted during infancy—
by a bankrupt to pay a debt discharged by bankruptcy—
by an endorser to pay a note from which he was dis-
charged for want of notice—by a person to pay the sum
due upon a note void for usury—or to pay a debt barred
by the statute of limitations. In all these cases, and
others of a like sort, the party would have been bound
in *conscience*, and by the principles of sound morality, to
pay the debt, irrespective of the new promise. Indeed,
so far as the new promise is concerned, though it gives

Martin Lewis & Co. *vs.* Gabriel Simons.

*legal vitality* to the moral obligation, it confers no additional sacredness upon it. But, a debt which is voluntarily discharged by the act of the party to whom it is due, for a valuable consideration, is wholly gone, and leaves no obligation to pay on the part of the other, either legal or moral. It is not necessary that the consideration received should have been equal in value to the debt discharged; certainly not in a *legal* point of view, nor, as it seems to me, in morals. The question to be decided in such cases is, what did the parties intend? If the intention was to put an *end* to the debt, then, all obligation ceased, and the thing became, as if no obligation had ever existed. It is difficult to perceive how any obligation could exist to discharge that, which has already been discharged by the party to whom it was due. To hold otherwise, would prevent a creditor from forgiving his debtor, either in whole, or in part, if he were ever so well inclined to do so; and would thus virtually deprive him of the right to control his own property. As already stated, it has been held that a gift, voluntarily made, will not sustain an express promise to pay its value. 11 *Ad.* & *El. supra.* Upon the same principle, it seems equally clear, that a debt voluntarily and fully discharged, will not be revived by a new promise.

So far as any American cases have been found on the subject, their weight is decidedly in favor of the position thus taken. The only case which has been cited to the contrary, is that of Willing *v.* Peters, 12 *Serg. & R.* 182, where the case is assimilated to a discharge in Bankruptcy; and it is said that there is no distinction between a discharge by operation of law, and one by the act of the party. The authority of this case, as remarked by

Judge Cowan, in Stafford *v.* Bacon, 1 *Hill* 533, is very much weakened, if not entirely overturned by that of Snevilly *v.* Reed, 9 *Watts* 396, decided by the same Court. In the latter case, the defendant having been arrested on a *Ca. Sa.* and voluntarily discharged therefrom by the plaintiff, made a new promise to pay the debt, and it was held he was not bound. The debt was discharged by the arrest and release. It was not *paid*, though *satisfied* in law. Yet, not more satisfied, than if it had been wholly released by any other act of the party. The Chief Justice, in delivering the opinion of the Court, without directly impeaching the validity of the decision in Willing *v.* Peters, says it went a very great way.

But the cases of Warren *v.* Whitney, 24 *Maine* 562, and Stafford *v.* Bacon, 1 *Hill* 533, are directly in point to the question we have been considering. In both of which it was held, that a debtor voluntarily discharged by his creditor on payment of part of the debt due, was not liable on a new promise, without further consideration, to pay the residue.

These decisions seem to us well founded in principle; and in accordance therewith, *the demurrer will be sustained.*

Judgement for the defendant.